## LITTERAL et al. v. SPURLOCK.

Court of Appeals of Kentucky.

Dec. 5, 1952.

Grannis Bach, Steve C. Bach, Jackson, for appellants.

O. J. Cockrell, Jackson, for appellee.

CAMMACK, Chief Justice.

Mr. and Mrs. J. M. Litteral are appealing from a judgment holding that Edgar Spurlock had not violated a coal mine lease which they executed to him. The Litterals contend on this appeal that the judgment should be reversed because (1) Spurlock had not installed scales at the mine as provided in the lease; (2) he had not paid all the royalties; and (3) he had unnecessarily gobbed the mine.

The Litterals own a truck mine on Highway 15, a few miles out of Jackson. They leased the mine to Spurlock in 1948. He was to pay 25 cents per ton for all coal taken from the mine. The lease provided that the coal should be weighed on scales placed at the mine by Spurlock. The royalties were to be paid on the 10th day of each month for the coal mined during the previous 30 days. Some of the coal was sold at the mine and the remainder was hauled to Jackson, where it was loaded in freight cars along with other coal which Spurlock had purchased. It was not until after this suit was instituted in October, 1950, that Spurlock installed scales at the mine.

Some of the proof was heard before the chancellor and some was taken by deposition. There is conflicting proof as to the cause of the delay in the installation of the scales. The appellants said they made repeated attempts to get Spurlock to install them. On the other hand, he said it was difficult to obtain scales at that time; that he purchased a set in Jackson; and that they were not installed because the seller had lost the diagram for their installation. There is proof also that the Litterals agreed for Spurlock to go ahead and operate the mine until he could get a satisfactory set of scales at a reasonable price.

Even though no scales were installed, the Litterals knew firsthand that the mine was in operation and they accepted the royalties paid them. The royalties on coal shipped by rail were estimated from the railway weight sheets. Those on the coal sold at the mine were calculated on the basis of the number of truckloads. The Litterals contend that Spurlock failed to account to them for all the royalties due, but our examination of the record convinces us there was ample evidence to support the finding of the chancellor that all royalties were accounted for.

Spurlock was removing the pillars from the mine. Apparently, there had been some gob left in the mine before he began his operations and he left additional gob. The testimony of the Litterals, including that of an engineer, was to the effect that Spurlock had gobbed the mine so as to make it unfit for further mining operations. The engineer said it was virtually impossible for him to survey the mine and calculate the damage done. On the other hand, a senior State mine inspector said the mine was operated "a little better than average," and that the gobbing did not interfere with its operation, in his judgment. There was other proof to the same effect.

We think the chancellor made a proper disposition of the whole case.

Judgment affirmed.